IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| VALLEY MED FLIGHT, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | Case No. _____ |
| TERRY DWELLE, M.D., in his Official Capacity ) | |
| as State Health Officer of the North Dakota ) | |
| Department of Health, and BRYAN KLIFPEL, in ) | |
| his Official Capacity as Executive Director of the ) | |
| NORTH DAKOTA WORKFORCE SAFETY & ) | |
| INSURANCE, ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT FOR DECLARATORY
AND INJUNCTIVE RELIEF**

Plaintiff, Valley Med Flight, Inc. ("Valley Med"), by and through its undersigned attorneys, brings this civil action for declaratory and injunctive relief and alleges as follows:

1. This is an action to declare invalid and to permanently enjoin the enforcement of (1) North Dakota House Bill 1255, enacted on April 20, 2015 as a new section of North Dakota Century Code Chapter 23-27 ("HB 1255"); and (2) North Dakota Century Code §§ 65-02-08 and 92-01.02(22) and the related "Fee Schedule" for air ambulance services provided in workers compensation cases ("Workers' Compensation Fee Schedule"), which are unconstitutional and preempted by federal law, namely the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b) and the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

2.      Congress included an express preemption clause in the ADA that prohibits States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b).

3.      Despite the ADA's well-established prohibition, HB 1255 directly and indirectly regulates the prices, routes and services provided by air ambulance service operators in the State. First, by creating a *primary* call list of air ambulance operators consisting of only operators who qualify as "participating provider[s]" to certain health insurance carriers in the state, HB 1255 regulates which operators may provide services to the market and creates an artificial hierarchy of providers. Second, by requiring air ambulance operators to become a participating provider and accept an insurance carrier's reimbursement rates in order to be on the primary call list, HB 1255 regulates air ambulance operators' ability to charge market prices. Lastly, by creating designated response zones, HB 1255 controls the routes operated by air ambulance providers.

4.      The ADA further preempts the Workers' Compensation Fee Schedule, which Fee Schedule seeks to regulate air ambulance operators' prices by setting mandatory rates for reimbursement of services in workers' compensation cases and by prohibiting any balance billing to the employer, employee or other insurer.

5.      HB 1255 is also preempted by EMTALA because HB 1255's protocol for contacting air ambulance service providers located in designated response zones conflicts with EMTALA's express rules vesting the treating physician with decision-making authority for emergency transport services.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to (a) 28 U.S.C. § 1331 because the action arises under (i) the Supremacy Clause of the Constitution of the United States, Article VI, clause 2 ("the Supremacy Clause"); (ii) the Interstate Commerce Clause of the Constitution of the United States, Article I, Section 8; and (iii) the laws of the United States known as the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1) and the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd; (b) 28 U.S.C. § 1337, because the matter in controversy arises under an Act of Congress regulating commerce, *i.e.*, the ADA; and (c) the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, because this is an actual controversy in which Plaintiff seeks declaratory relief.

7. Venue is proper in the District of North Dakota pursuant to 28 U.S.C. § 1391(b) because Defendants are residents of, are found within, and have agents within and/or transact their affairs in this District, and the enactment of the unconstitutional legislation occurred in this District.

## PARTIES

8. Plaintiff Valley Med Flight, Inc. ("Valley Med") is a North Dakota corporation with its principal place of business in Grand Forks, North Dakota.

9. Defendant Terry Dwelle, M.D. is the State Health Officer of the North Dakota Department of Health, sued in his official capacity. His office is located at 600 Boulevard Avenue, Bismarck, North Dakota 58505.

10. Defendant Bryan Klipfel is the Executive Director of North Dakota Workforce Safety & Insurance ("WSI"), sued in his official capacity. His office is located at 160 East Century Avenue, Suite 1, Bismarck, North Dakota 58503-0649.

11. WSI is the state agency charged with managing North Dakota's workers' compensation system. WSI is not an insurance company, is not subject to state or federal rules and regulations governing insurance providers, and is not subject to oversight by North Dakota's Insurance Department.

12. WSI falls under the jurisdiction of North Dakota's executive branch and WSI's Executive Director and Board of Directors are appointed by the Governor.

## FACTUAL BACKGROUND

**A.  Valley Med's Operations**

13. Valley Med provides emergency air ambulance services throughout the State of North Dakota to destinations in North Dakota and surrounding states.

14. Valley Med is authorized by the Federal Aviation Administration ("FAA") to operate as a Part 135 air carrier providing on-demand air ambulance services.

15. Valley Med also is registered with the United States Department of Transportation ("DOT") to operate as a Part 298 air taxi operator providing on-demand services.

16. Pursuant to its Part 135 certificate and Part 298 registration, Valley Med is authorized to operate interstate flights and, as a common carrier for compensation, qualifies as an "air carrier" as that term is defined in the ADA.

17. Valley Med provides life-saving emergency medical transportation using fixed and rotor wing aircraft that meet FAA-airworthiness standards.

18. Valley Med's staff includes FAA-certified pilots, FAA-certified ground crew and mechanics, critical care nurses, and paramedics.  Valley Med's flight crews are flight-ready 24 hours a day, 7 days a week.

19. Valley Med is a private, independent air ambulance service provider licensed by the State of North Dakota. As such, its operations are not directly affiliated with or controlled by a specific medical facility.

20. As an independent provider, Valley Med may directly employ or contract for its medical and flight crews.

21. Valley Med, as an emergent care provider, may be dispatched by the emergency department of a hospital or by an attending physician under regulations and procedures set out by EMTALA.

22. Each aircraft operated by Valley Med in North Dakota is configured with approximately $300,000 in critical care equipment and supplies.

23. Valley Med's costs to operate its air ambulance business include, but are not limited to, the purchase, lease, and maintenance of crew housing; purchase and maintenance of aircraft and ancillary vehicles; crew transportation; medical equipment; insurance; fuel; medical supplies; flight simulators; and salaries of critical care nurses, paramedics, FAA-certified pilots, and FAA-certified ground crew and mechanics.

24. Valley Med's bases are located throughout the State of North Dakota and include under-served rural communities, such as Dickinson, Devil's Lake, Williston, and Grand Forks.

25. Valley Med routinely transports patients from these rural communities to higher care facilities located in North Dakota, Minnesota, Colorado and Montana.

**B.  North Dakota House Bill 1255 ("HB 1255")**

26. On or about January 13, 2015, HB 1255 was introduced as a bill in the North Dakota House of Representatives. The primary sponsor of HB 1255 was North Dakota State Representative Todd Porter.

27. The purpose of HB 1255 is to lower prices for air ambulance services provided by operators in the State of North Dakota.

28. On April 6, 2015, Senator Judy Lee introduced the Senate Amendment to HB 1255 to address "real serious issues with the kind of balance billing being charged" by air ambulance operators.[1]

29. On April 14, 2015, State Representative Hofstad stated that "[t]he amendments to HB 1255 were developed by the Senate, along with the Insurance Department, the Health Department and State Radio. The amendments are an attempt to curb the exorbitant rates charged by some air ambulance providers."[2]

30. On or about April 14, 2015, the North Dakota legislature passed HB 1255.

31. On or about April 21, 2015, the Governor signed HB 1255 and the Secretary of State filed the bill on April 23, 2015. The law took effect immediately.

32. HB 1255 provides that the Department of Health "shall create and maintain a primary call list and a secondary call list of air ambulance service providers operating in this state."

33. In order to qualify to be listed on the primary call list, HB 1255 requires "an air ambulance service [to] submit to the [Department of Health] attested documentation indicating the air ambulance service provider is a participating provider of the health insurance carriers in the state which collectively hold at least seventy-five percent of the health insurance coverage in the state as determined by annual market share reports."

---

[1] Available at http://video.legis.nd.gov/pb3/powerbrowser_Desktop.aspx?wowzaplaystart =2945000&ContentEntityId=600&MediaStart=2015-04-06T13%3a44%3a07 06%3a00&browser=0

[2] Available at http://video.legis.nd.gov/pb3/powerbrowser_Desktop.aspx?wowzaplaystart =2624000&ContentEntityId=631&MediaStart=2015-04-14T13%3a38%3a44- 06%3a00&browser=0

34. This provision essentially means that an air ambulance service provider must be a "participating provider" with Blue Cross Blue Shield North Dakota (BCBS), as BCBS has over 50% of North Dakota's health insurance market. [3]

35. Under HB 1255, the Department of Health will distribute the primary and secondary call lists for air ambulance service providers operating in North Dakota "to all emergency service personnel, each hospital licensed under chapter 23-16, each 911 coordinator in the state, and each public safety answering point operating in the state."

36. Under HB 1255, the Department of Health also will establish "service response zones for rotary wing aircraft which are based on response times and patient health and safety." Upon receipt of requests for air ambulance services, reasonable efforts shall be made to inform the requesting party of the estimated response time and for the requested air transport versus the ground transport for that designated time zone.

37. Additionally, under HB 1255, the recipient of the request must comply with the call priority in responding to a request for air ambulance services and first contact a provider in the designated response zone from the primary call list. If a primary call responder is not available, then the recipient of the request shall advise the requester and contact a provider on the secondary call list within the designated response zone. If no secondary call list responders are available, then the recipient of the request shall notify the requesting party of options outside the designated response zone.

---

[3] From BCBS "Company Facts" available at https://bcbsnd./com/about/company/facts; *see also* Study: North Dakota Health Insurance Market Near Monopoly (indicating that in 2012 BCBS of ND had 85% of market share), available at http://www.insurancejournal.com/news/midwest/2012/12/05/272836.htm.

38.     HB 1255 further requires that upon request of either the Department of Health, a potential patient, or a potential patient's legal guardian, an air ambulance service operator must provide its fee schedule (including the base rate, per loaded mile, and any usual and customary charges).

39.     This fee information shall be compiled and distributed to each hospital licensed under chapter 23-16; each hospital emergency department in the state; each physician likely to generate air ambulance transport; each emergency medical services operation, professional and personnel; each public safety answering point and each 911 coordinator in the state.

40.     Before a hospital refers a patient to an air ambulance service provider, efforts must be made to inform the patient or the patient's legal guardian of the fees for air ambulance services.

## C.     Workers' Compensation Fee Schedule

41.     Pursuant to North Dakota Century Code § 65-02-08, WSI has the authority to establish and enforce a fee schedule for air ambulance services, and provides that "[a]ll fees on claims for medical and hospital goods and services provided under this title to an injured employee must be in accordance with schedules of fees adopted by the organization."

42.     With respect to air ambulance services, North Dakota has published a schedule of air ambulance rates. The rates set for air ambulances are as follows:

| | | |
|---|---|---|
| 0430 | Fixed Wing, Based Rate | $4890.36 |
| 0431 | Rotor Wing, Base Rate | $5685.77 |
| 0435 | Fixed Wing, Mileage Rate | $13.88 |
| 0436 | Rotor Wing, Mileage Rate | $37.00 |

43.     The language provided on the Remittance Form for each claim from WSI contains the following language:

   PROVIDER NOTICE - APPLICABILITY OF LAW

>Injured employees covered by the North Dakota Workers Compensation Act fall under the jurisdiction of North Dakota statutes and receive benefits pursuant to North Dakota Century Code, Title 65 and North Dakota Administrative Code, Chapter 92-01-02.

44. Reimbursements for treatment are therefore determined under, and governed by, North Dakota law.

45. A provider who renders treatment to an injured employee in North Dakota's jurisdiction is subject to North Dakota's workers' compensation rules and fees.

46. North Dakota workers' compensation law sets the maximum fees for medical and hospital care.

47. North Dakota law does not allow the medical service provider to bill the patient, the patient's employer, or any other insurer for any services rendered as a result of the compensable work injury.

48. North Dakota Administrative Code § 9 2-01-02-45.1(22) expressly prohibits a provider of medical services from billing a claimant for the difference between the provider's charges and the amount set by WSI's fee schedules, a practice known as "balance billing," pursuant to the following:

>A provider may not bill a claimant a fee for the difference between the maximum allowable fee set forth in the organization's fee schedule and usual and customary charges, or bill the claimant any other fee in addition to the fee paid, or to be paid, by the organization for individual treatments, equipment, and products.

49. Valley Med has timely submitted to WSI more than 100 claims for payment for air ambulance services provided by Valley Med to injured employees in North Dakota.

50. From September 2013 to April 2015, WSI has declined to pay Valley Med's rates, and instead has paid the claims according to the air carrier rates set forth in the Workers' Compensation Fee Schedule.

51. Valley Med has never filed a lawsuit against any individual person in North Dakota for a balance bill relating to a Workers Compensation claim, but instead has reached out to WSI to resolve this issue.

52. Valley Med anticipates that it will continue to provide air ambulance services to injured employees and submit claims to WSI for payment at Valley Med's rates.

53. WSI knows that the cost of services rendered by Valley Med is substantially higher than the rates set by WSI in its fee schedule and, as a result, WSI has received, and continues to receive, the full benefits of such services at Valley Med's expense.

54. In contrast to the North Dakota regulatory scheme, other States' workers compensation divisions have amended their official medical fee schedule for air ambulance service providers by adding an exclusion to those fees for services provided by air ambulance providers who qualify as "air carriers." See, e.g., Cal. Admin. Code tit. 8 § 9789.70; Montana Admin. R. 24.29.1433(11)(f).

55. California's workers compensation regulations set the maximum fees for ambulance services at 120% of the fee prescribed in the relevant Medicare payment system, or the fee specified in California's 2003 Official Medical Fee Schedule. However, after determining that "air carriers" would be preempted by the ADA, the division added a new subsection to the statute, which provides:

> This section is not applicable to services provided by any air ambulance provider which at the time of service is an "air carrier" as defined in Title 49 U.S.C.A. Section 40102, a part of the Airline Deregulation Act of 1978 as amended.

Cal. Admin. Code tit. 8 § 9789.70(c).

56. Similarly, in 2013, the State of Montana revised its Workers' Compensation Administrative Rules to provide that "[a]ir ambulances whose charter and certification is through

the federal Department of Transportation will be paid at 100 percent of their usual and customary charges pursuant to federal law." Montana Admin. R. 24.29.1433(11)(f). As stated in Montana's Facility Fee Schedule Instruction Set:

> The State of Montana does not have the authority to set a fee schedule rate for Air Ambulances on workers' compensation patients who have their operating authority through the Federal Department of Transportation (Airline Deregulation Act of 1978 (ADA)). State of Montana administrative rules are preempted by federal law 49 U.S.C. § 41713(b). Air ambulances that are regulated by federal law will be paid at the usual and customary charge for the carrier.

Montana Facility Fee Schedule Instruction Set, effective July 1, 2014, at p. 8.

**D.     The Airline Deregulation Act**

57.    In 1978, Congress amended the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et. seq.*, and enacted the ADA with the intention of deregulating the aviation industry.

58.    Congress included an express preemption clause in the ADA that prohibits States from "enact[ing] or enforc[ing] a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

59.    This express preemption clause was included "to ensure that States would not undo federal deregulation with regulation of their own," (*Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992)), and to "prevent conflicts and inconsistent regulations" of air carriers by the federal government and the fifty states. H.R. Rep. No. 95-1211, at 16 (1978).

60.    In passing the ADA, Congress determined that "an air transportation system relying on actual and potential competition" would best further "efficiency, innovation, and low prices" as well as "variety [and] quality ... of air transportation services." 49 U.S.C. § 40101   (a)(12).

61.    Congress also recognized that it is in the public interest to place "maximum reliance on competitive market forces and on actual and potential competition − (A) to provide the needed

air transportation system; and (B) to encourage efficient and well-managed carriers to earn adequate profits and attract capital." 49 U.S.C. § 40101(a)(6).

62. The ADA's preemption clause is interpreted broadly, and preemption is found where claims have "a connection with, or reference to" an air carrier's prices, routes or services. *See Northwest, Inc. v. Ginsberg*, __ U.S. __, 134 S. Ct. 1422 (2014); *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995); *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).

63. The Office of the General Counsel for the Department of Transportation has reinforced this expansive view of preemption and reliance on market forces, specifically in the air ambulance context. In its *Guidelines for the Use and Availability of Helicopter Emergency Medical Transport (HEMS)*,[4] the Office of the General Counsel summarizes its various opinions on FAA and ADA preemption in air ambulance cases. In discussing federal preemption of state laws that require certificates of authority or need to operate in the state, the Office notably confirmed that:

> [o]nce the Secretary [of Transportation] certificates an air ambulance operator, *the competitive marketplace, rather than state regulations*, controls the operator's prices, routes, and services, and only the Secretary may revoke an air ambulance operator's certificate.

*Id*. at 11 (emphasis added).

### Count One: Declaratory Judgment that HB 1255 Is Preempted By the ADA and Injunctive Relief to Enjoin Its Enforcement

64. Plaintiff repeats and realleges paragraphs 1 through 63 of this Complaint as though fully set forth herein.

---

[4] Available at *http://www.dot.gov/sites/dot.gov/files/docs/ Guidelines%20for%20the%20Use%20and%20Availability%20of%20Helicopter%20Eme rgency%20Medical%20Transport%20%28HEMS%29%20OCR.pdf* (.

65. HB 1255 is preempted by the ADA because it "relates to" the prices, routes and services provided by air ambulance service providers in North Dakota, including Valley Med.

66. Specifically, by creating a "primary call list" for air ambulance services that depends on an operator's status as a "participating provider" with certain health insurance carriers in the State, the law limits the ability of air ambulance providers to compete fairly and provide their services to the air ambulance market.

67. Secondary call list providers, which consist of air ambulance service providers who do not qualify as "participating providers," are excluded from the primary call list and will not receive a "first" call for air ambulance services. Such providers will likely be forced to discontinue their services in the State and leave the market as a direct result of the State's improper enactment and enforcement of HB 1255.

68. HB 1255 also indirectly affects the prices that air ambulance operators may charge because in order to become a "participating provider," the operator will be required to accept the prices mandated by health insurance carriers which collectively hold at least 75% of the health insurance coverage in the state, which currently and for the foreseeable future means that the operator will be required to accept prices mandated by BCBS.

69. North Dakota is one of the least competitive health insurance markets,[5] and air ambulance service providers have closed operations in North Dakota as a direct result of the unreasonably low reimbursements rates paid by health insurance carriers.[6]

---

[5] See American Medical Association's *Competition in Health Insurance: A Comprehensive Study of U.S. Markets* (2014).
[5] See paragraph 36 of Complaint and supporting information.
[6] Med-Trans, the second largest air ambulance company in the US, had operated in North Dakota under the name of Spirit Lifeline and left the State because the reimbursement rates received from insurance companies in North Dakota were "too low to sustain business here." http://www.prairiebizmag.com/event/article/id/20007/

70. By virtue of HB 1255, the dominant insurance carriers in the State, such as BCBS, will effectively be setting the prices for air ambulance services.

71. Following the enactment of HB 1255, hospitals and other emergency providers were advised that Valley Med is not on the "primary call list," thus impacting Valley Med's ability to provide services and causing immediate and ongoing harm to Valley Med.

72. In order to be listed on the primary call list, Valley Med was compelled to sign a one-year agreement with BCBS at rates that are substantially below the market rates charged by an air ambulance operator.

73. Prior to signing the agreement with BCBS on May 12, 2015, Valley Med had made numerous attempts to become a participating provider with BCBS, but BCBS offered reimbursement only at a percentage of Medicare rates and would not agree to Valley Med's market rates.

74. Valley Med, if unable to set its air carrier rates to sustain its operations in the State, will likely be forced to cease its critical life saving operations in rural communities in North Dakota, with such cessation at the expense of the life and health of citizens in rural communities.

75. Because HB 1255 is regulating air ambulance operators' ability to (i) provide services to the North Dakota emergency air transport market, and (ii) charge market rates rather than rates mandated by an insurance carrier, the statute is preempted by the ADA and this Court should declare HB 1255 invalid and unenforceable.

76. Additionally, because HB1255 establishes certain service response zones for rotary wing aircraft, it further regulates the routes of air ambulance operators like Valley Med, and this Court should declare HB 1255 invalid and unenforceable.

**Count Two: Declaratory Judgment that HB 1255 Violates the Supremacy Clause of the U.S. Constitution and Injunctive Relief to Enjoin Its Enforcement**

77. Plaintiff repeats and realleges paragraphs 1 through 76 of this Complaint as though fully set forth herein.

78. Pursuant to Article VI, Section 2 of the U.S. Constitution (the Supremacy Clause), any State statute, rule or regulation that conflicts with Federal law is preempted.

79. Specifically, HB 1255 is unconstitutional and conflicts with the ADA, which prohibits States from enacting or enforcing laws that relate to prices, routes or services of air carriers such as Valley Med.

80. Accordingly, this Court should declare that the provisions of HB 1255 are invalid and unenforceable because they violate the Supremacy Clause of the U.S. Constitution, Article VI.

**Count Three: Declaratory Judgment that HB 1255 Violates the Commerce Clause of the U.S. Constitution and Injunctive Relief to Enjoin Its Enforcement**

81. Plaintiff repeats and realleges paragraphs 1 through 80 of this Complaint as though fully set forth herein.

82. Valley Med provides air ambulance eservices within the State of North Dakota and to surrounding states, including Minnesota, Colorado and Montana.

83. Enforcement of HB 1255 would constitute an impermissible burden and restriction on interstate commerce by the State of North Dakota.

84. HB 1255 impacts the prices, routes, and services provided by Valley Med not only within but outside the State of North Dakota.

85. Accordingly, this Court should declare that HB 1255 is invalid and unenforceable because it violates the Commerce Clause of the U.S. Constitution, Article 1, Section 8.

**Count Four: Declaratory Judgment that HB 1255 Is Preempted by EMTALA and Injunctive Relief to Enjoin Its Enforcement**

86.     Plaintiff repeats and realleges paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87.     HB 1255 directs emergency departments or attending physicians to follow a protocol for emergency air transport services and to contact only providers on primary and secondary call lists in designated response zones.

88.     EMTALA requires hospitals that accept payment under the Medicare program to provide emergency health care treatment to anyone in need regardless of citizenship, legal status or ability to pay.

89.     The federal regulations that implement EMTALA are found at 42 C.F.R. § 489.24.

90.     The interpretive guidelines for EMTALA provide, in relevant part:

[I]t is the treating physician at the transferring hospital who decides how the individual is transported to the recipient hospital and what transport service will be used, since this physician has assessed the individual personally. The transferring hospital is required to arrange transport that minimizes the risk to the individual who is being transferred, in accordance with the requirements of § 489.24(e)(2)(iv).

91.      42 C.F.R. § 489.24(d) provides:

 [a] participating hospital may not delay provision of an appropriate medical screening examination required under subsection (a) of this section or further medical examination and treatment required under subsection (b) of this section in order to inquire about the individual's method of payment or insurance status. (42 U.S.C.A. § 1395dd(h); see also 42 C.F.R. § 489.24(d)(4)(I)).

92.     HB 1255 conflicts with the provisions of EMTALA, which expressly prohibit delay in treatment and state that it is the treating physician at the transferring hospital who decides how to transport a patient and what transport service will be used.

93.     By imposing additional demands on the treating physician or hospital and removing the decision-making authority for emergency transport, HB 1255 encroaches into the

16

congressionally mandated safe-harbor of requiring the treating physician or hospital to make the decision "that minimizes the risk to the individual who is being transferred."

94.     Because HB 1255 is preempted by EMTALA, this Court should declare HB 1255 invalid and unenforceable.

**Count Five: Declaratory Judgment that HB 1255 Violates the Supremacy Clause of the U.S Constitution and Injunctive Relief to Enjoin Its Enforcement**

95.     Plaintiff repeats and realleges paragraphs 1 through 94 of this Complaint as though fully set forth herein.

96.     Pursuant to Article VI, Section 2 of the U.S. Constitution (the Supremacy Clause), any State statute, rule or regulation that conflicts with Federal law is preempted.

97.     Specifically, HB 1255 is unconstitutional and conflicts with the provisions of EMTALA, which expressly prohibit delay in treatment and state that it is the treating physician at the transferring hospital who decides how to transport a patient and what transport service will be used.

98.     Accordingly, this Court should declare that the provisions of HB 1255 are invalid and unenforceable because they violate the Supremacy Clause of the U.S. Constitution, Article VI.

**Count Six: Declaratory Judgment that North Dakota's Workers' Compensation Fee Schedule Is Preempted By the ADA**

99.     Plaintiff repeats and realleges paragraphs 1 through 98 of this Complaint as though fully set forth herein.

100.    North Dakota Century Code §§ 65-02-08, North Dakota Administrative Code § 92-01-02-45.1(22) and the Workers' Compensation Fee Schedule are preempted by the ADA because they "relate to" the prices that air ambulance service providers may charge in North Dakota.

101. Specifically, North Dakota Century Code §§ 65-02-08, North Dakota Administrative Code § 92-01-02-45.1(22) and the Workers' Compensation Fee Schedule collectively mandate the reimbursement rates for air ambulance services and prohibit any balance billing to the employer, employee or other insurer.

102. Valley Med has timely submitted to WSI more than 100 claims for payment for air ambulance services provided to injured employees in North Dakota.

103. From September 2013 to April 2015, WSI has declined to pay Valley Med's rates, and instead has paid the claims according to the air carrier rates set forth in the WC Fee Schedule.

104. By imposing caps on the rates that air ambulance operators such as Valley Med may recover for services provided to injured employees under the State's workers' compensation laws, the Workers' Compensation Fee Schedule is preempted by the ADA.

105. Accordingly, this Court should be declare the Workers' Compensation Fee Schedule invalid and unenforceable as to air ambulance providers.

**Count Seven: Declaratory Judgment that North Dakota's Workers Compensation Fee Schedule Violates the Supremacy Clause of the U.S. Constitution**

106. Plaintiff repeats and realleges paragraphs 1 through 105 of this Complaint as though fully set forth herein.

107. Pursuant to Article VI, Section 2 of the U.S. Constitution (the Supremacy Clause), any State statute, rule or regulation that conflicts with Federal law is preempted.

108. Specifically, the Workers' Compensation Fee Schedule is unconstitutional and conflicts with the ADA, which prohibits States from enacting or enforcing laws that relate to prices, routes or services of air carriers such as Valley Med.

109. Accordingly, this Court should declare the provisions of the Workers' Compensation Fee Schedule invalid and unenforceable as to air ambulance carriers because they violate the Supremacy Clause of the U.S. Constitution, Article VI.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that the Court:

(1) Issue a Declaratory Judgment that declares the North Dakota laws complained of herein invalid and unenforceable as preempted by the Constitution and laws of the United States;

(2) Issue a preliminary injunction, the same to be made permanent on final judgment:

(a)  Restraining and enjoining defendants, their employees or agents, from enforcing or seeking to enforce the provisions of the North Dakota laws determined by this Court to be invalid and preempted by federal law; and

(b)  Requiring defendants to issue such notices, and take such steps as shall be necessary and appropriate to carry into effect the substance and intent of paragraph (a) above, including but not limited to the requirement that defendants publicly withdraw, and rescind any orders that seek to enforce, the provisions of the North Dakota statutes herein determined by this Court to be preempted by federal law; and

(3) Grant such other further or different relief as to which the Plaintiff may be entitled.

Dated: June 4, 2015

/s/ Ronald J. Knoll
Ronald J. Knoll (ND ID 05045)
Joshua M. Feneis (ND ID 08169)
Anderson, Bottrell, Sanden & Thompson
4132 30th Avenue SW, Suite 100
P.O. Box 10247
Fargo, ND  58106-0247
Phone: (701) 235-3300
*rknoll@andersonbottrell.com*
*jfeneis@andersonbottrell.com*
Attorneys for Plaintiff