IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | |
|---|---|
| VALLEY MED FLIGHT, INC., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>TERRY DWELLE, M.D., in his Official Capacity )<br>as State Health Officer of the North Dakota )<br>Department of Health, and BRYAN KLIFPEL, in )<br>his Official Capacity as Executive Director of the )<br>North Dakota Workforce Safety & Insurance, )<br>)<br>Defendants. ) | Case No. 1:15-cv-00070 |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................... ii
ARGUMENT .............................................................................................................................. 1
I.   HB1255 REGULATES MARKET PARTICIPATION AND IMPOSES RESTRICTIONS ON PRICES AND ROUTES ............................................................. 1
    A.   The ADA Preempts HB 1255's Creation of Primary and Secondary Call Lists ................................................................................................................. 1
    B.   Designation of Response Zones With Call Priorities Impacts an Operator's Routes ........................................................................................... 2
    C.   The ADA Preempts Mandated Disclosure of Prices to Patients and Hospitals ............................................................................................................ 3
II.   DEFENDANTS' REVERSE PREEMPTION ARGUMENTS UNDER THE MCCARRAN FERGUSON ACT FAIL AS A MATTER OF LAW ............................ 3
    A.   Congress Explicitly Intended to Preempt This Area of National Concern .............. 4
    B.   Neither HB 1255 Nor the Challenged Workers Compensation Laws and Fee Schedule Qualify as the "Business of Insurance" ............................................ 6
        1.   HB 1255 Does Not Regulate the "Business of Insurance" ......................... 7
        2.   The Challenged Workers Compensation Laws and Fee Schedule Regulate the Relationship With Third-Party Providers ............................. 8
IV.   EMTALA PREEMPTS HB 1255 ................................................................................... 9
V.   PLAINTIFF ASSERTS A VALID COMMERCE CLAUSE VIOLATION .................... 10
CONCLUSION .......................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abdullah v. Am. Airlines Inc.*,
 181 F.3d 363 (3d Cir. 1999)............................................................................................5, 6

*Bailey v. Rocky Mountain Holdings LLC*,
 No. 13-62447, __ F. Supp. 3d __, 2015 WL 5885379
 (S.D. Fla. Sept. 23, 2015)............................................................................................4, 5, 9

*Barnett Bank of Marion County, N.A. v. Nelson*,
 517 U.S. 25 (1996) ..............................................................................................................4

*Blackfeet Nat'l Bank v. Nelson*,
 171 F.3d 1237 (11th Cir. 1999) ..........................................................................................5

*Brown v. Cassens Transp. Co.*,
 546 F.3d 347 (6th Cir. 2008) ..............................................................................................6

*Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*,
 20 F. Supp. 2d 1345 (S.D. Fla. 2013) ................................................................................8

*City of Burbank v. Lockheed Air Terminal, Inc.*,
 411 U.S. 624 (1973)............................................................................................................5

*Dudek v. Prudential Secs. Inc.*,
 295 F.3d 875 (8th Cir. 2002) ..............................................................................................4

*ESAB Group, Inc. v. Zurich Ins. PLC*,
 685 F.3d 376 (4th Cir. 2012) ..............................................................................................4

*General Motors Corp. v. Tracy*,
 519 U.S. 278 (1997)..........................................................................................................10

*Genord v. Blue Cross & Blue Shield of Mich.*,
 440 F.3d 802 (6th Cir. 2006) ..........................................................................................7, 8

*Group Life & Health Ins. Co. v. Royal Drug Co.*,
 440 U.S. 205 (1979)........................................................................................................7, 9

*Hahn v. Oregon Physicians Serv.*,
 689 F.2d 840 (9th Cir. 1982) ..............................................................................................7

*Humana v. Forsyth,*
    525 U.S. 299 (1999) ..................................................................................................4

*Lander v. Hartford Life & Annuity Ins., Co.,*
    251 F.3d 101 (2d Cir. 2001) .....................................................................................4

*In re Managed Care Litig.,*
    298 F. Supp. 2d 1259 (S.D. Fla. 2003) ....................................................................8

*Med-Trans Corp. v. Benton,*
    581 F. Supp. 2d 721 (E.D.N.C. 2008) .....................................................................2

*Metro. Life Ins. Co. v. Ward,*
    470 U.S. 869 (1985) ..................................................................................................5

*Morales v. Trans World Airlines, Inc.,*
    504 U.S. 374 (1992) ..................................................................................................3

*Northwest, Inc. v. Ginsberg,*
    134 S. Ct. 1422 (2014) .............................................................................................2

*Nw. Airlines, Inc. v. Minn.,*
    322 U.S. 292 (1944) ..................................................................................................5

*In re PepsiCo Inc. Bottled Water Mktg. & Sales Prac. Litig.,*
    588 F. Supp. 2d 527 (S.D.N.Y. 2014) ...................................................................10

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) ................................................................................................10

*Rowe v. New Hampshire Motor Transport Ass'n,*
    552 U.S. 364 (2008) ..................................................................................................6

*SEC v. Nat'l Secs., Inc.,*
    393 U.S. 453 (1969) ..................................................................................................7

*Spirt v. Teachers Ins. & Annuity Ass'n,*
    691 F.2d 1054 (2d Cir. 1982) .................................................................................5

*Stephens v. Nat'l Distibs. & Chem. Corp.,*
    69 F.3d 1226 (2d Cir. 1995) ....................................................................................4

*Union Labor Life Ins. Co. v. Pireno,*
    458 U.S. 119 (1982) ..................................................................................................7

*In re Workers' Comp. Ins. Antitrust Litig.,*
    867 F.2d 1552 (8th Cir. 1989) .................................................................................8

*Wright Elec., Inc. v. Minn. State Bd. of Elec.*,
   322 F.3d 1025 (8th Cir. 2003) .................................................................................. 9

**Statutes**

Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ................................................. *passim*

McCarran Ferguson Act, 15 U.S.C. § 1012(b) ....................................................... *passim*

Noth Dakota Century Code § 23-27-04.10 ............................................................. *passim*

Plaintiff Valley Med Flight, Inc. ("Plaintiff"), by and through its undersigned attorneys, submits this reply memorandum of law in further support of its motion for judgment on the pleadings.

## ARGUMENT
### I.
### HB 1255 REGULATES MARKET PARTICIPATION AND IMPOSES RESTRICTIONS ON PRICES AND ROUTES

A.  **The ADA Preempts HB 1255's Creation of Primary and Secondary Call Lists**

The overriding intent of North Dakota Century Code § 23-27-04.10 ("HB 1255"), as publicly stated by the legislature, is to control air ambulance prices and services. By its express terms, the statute is creating primary and secondary call lists that will dictate *which* operators will have priority in serving the air ambulance market in North Dakota. Only those operators who become "participating providers" with major insurers in the State will qualify for the primary call list. Although Defendants contend that becoming a participating provider is a "business decision" by air ambulance operators and the new law merely "encourag[es]" – not requires – the operators to do so (Doc. 21 at 11), it is patently obvious that air ambulance operators who operate in the North Dakota market have no choice but to become a participating provider (and accept an insurer's rates) or discontinue operations in the State.[1]

The two-tier hierarchy created by HB 1255 directly impacts air ambulance services, reduces competition, and indirectly impacts the prices of those operators who become participating providers. This hierarchy is no different than other state restrictions on market participation that have been struck down on preemption grounds. By granting preferential treatment to certain air ambulance operators, HB 1255 destroys any level playing field for air ambulance services and will drive secondary call list operators from the market. Defendants

---

[1] This argument relates to N.D.C.C. § 23-27-04.10 (1), (2), and (3), which establish primary and secondary call lists and the criteria for and distribution of such lists.

ignore that it is the *effect* of the state law on the air carrier's services and prices that is relevant for ADA preemption,[2] and here, that effect is readily apparent. Air ambulance providers on the secondary call list will receive fewer calls for services and, in fact, may *never* receive a call.

The Supreme Court decisions cited by Plaintiff (*Morales, Wolens, Ginsberg* and *Rowe*) exemplify the breadth of ADA preemption. Defendants incorrectly posit that these cases are factually and legally distinguishable, when indeed they affirmatively demonstrate how State laws, even those related to public health, cannot interfere with an air carrier's prices, routes and services. The same is true for the Eighth Circuit preemption authorities. Moreover, the air ambulance cases and DOT legal opinions relied on by Plaintiff consistently determined that analogous state law restrictions on air ambulance operations were preempted.

B.  **Designation of Response Zones With Call Priorities Impacts an Operator's Routes**

Defendants contend that HB 1255's establishment of air ambulance service response zones is intended to provide prompt medical service and primarily has a patient care objective. (Doc. 21 at 9) However, HB 1255, as written, appears to relegate certain providers to specific service areas and, thus, improperly regulates their services and routes. *See, e.g.,* N.D.C.C. § 23-27-04.10(4)(b)(1) ("recipient of the request shall call an air ambulance service provider listed on the primary call list which is within the designated response zone"); *see Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 738 (E.D.N.C. 2008) (ADA preempted state law requiring air ambulance operators to define their respective service areas and routes).[3] Additionally, HB 1255 requires that emergency responders follow a call list protocol within these response zones. Any use of such call lists significantly impacts an operator's services and further warrants preemption.

---

[2] *Northwest, Inc. v. Ginsberg,* 134 S. Ct. 1422, 1430 (2014) ("[w]hat is important" for preemption is "*the effect* of a state law, regulation or provisions, not its form").
[3] To the extent that rules are still being formulated to clarify how the response zones will work, Plaintiff reserves its rights to further challenge N.D.C.C. § 23-27-04.10(4).

2

### C.     The ADA Preempts Mandated Disclosure of Prices to Patients and Hospitals

Defendants argue that HB 1255's disclosure rules "in no way regulate[] or fix[] the fee of air ambulance service providers. Rather, [they] provide[] a mechanism for patients and patients' guardians to obtain fee schedules so they can make informed decisions." (Doc. 21 at 6) However, the law's disclosure rules are plainly contrary to *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 388-89 (1992), which relied on the ADA's "broad pre-emptive purpose" in holding that various state attorney generals could not impose guidelines on air carriers that set standards regarding the content and format of fare disclosures. No matter how noble the State's intent in passing intrusive regulations or laws in this area, such acts are preempted. Moreover, Defendants' suggestion that the disclosure rules promote "maximum reliance on competitive market forces" is disingenuous as the new law places primary bargaining power for pricing of air ambulance services in the hands of essentially one health insurer with a monopoly in the State.[4]

## II.
## DEFENDANTS' REVERSE PREEMPTION ARGUMENTS UNDER THE MCCARRAN FERGUSON ACT FAIL AS A MATTER OF LAW

Defendants erroneously contend that the ADA does not preempt HB 1255 and the challenged workers compensation laws and fee schedule because under the McCarran-Ferguson Act (MFA), these state laws regulate the "business of insurance" and reverse preempt federal law. The MFA, however, is inapposite to situations where the federal statute – here the ADA – expressly preempts state regulation in an area known for its national interest. Additionally, neither HB 1255 nor the challenged workers compensation laws and fee schedule satisfy the "business of insurance" test necessary for reverse preemption.

---

[4] Subsection 6 of HB 1255 addresses rules that have not yet been enacted and, therefore, Plaintiff reserves its rights to challenge those rules in the future.

3

A.   **Congress Explicitly Intended to Preempt This Area of National Concern**

In applying the MFA, Defendants overlook two critical facts: (1) the ADA *explicitly, not inadvertently*, displaces State regulation of an air carrier's prices, routes and services; and (2) regulation of the air industry is an area of national concern such that federal control is paramount and overrides State laws that conflict with federal preemption.

As the Supreme Court explained in *Barnett Bank of Marion County, N.A. v. Nelson*, the MFA "does not seek to insulate state insurance regulation from the reach of all federal law." 517 U.S. 25, 39 (1996).[5] It is only where a statute, by *unintended* implication, encroaches upon a State's insurance regulatory regime that the MFA prevents its application.[6] "But when the intended effect of a federal statute is to displace state regulation, [a court] must give effect to this intent, regardless of whether an insurance company is involved." *Lander v. Hartford Life & Annuity Ins., Co.*, 251 F.3d 101, 116-17 (2d Cir. 2001); *see Dudek v. Prudential Secs. Inc.*, 295 F.3d 875, 878 (8th Cir. 2002) (rejecting MFA's reverse preemption of SLUSA's intentionally broad preemption provision).

As reflected in the extensive list of ADA preemption cases and DOT legal opinions cited by Plaintiff (Doc. 15 at 9-24), there is no dispute that Congress explicitly intended the ADA to expressly preempt State laws that regulate an air carrier's prices, routes and services. Indeed, the court in *Bailey v. Rocky Mountain Holdings LLC*, No. 13-62447, __ F. Supp. 3d __, 2015 WL 5885379 (S.D. Fla. Sept. 23, 2015) recently rejected similar reverse preemption arguments where

---

[5] *See Humana v. Forsyth*, 525 U.S. 299, 308-09 (1999) (rejecting "any suggestion that Congress intended to cede the field of insurance regulation to the states, saving only instances in which Congress expressly orders otherwise"); *Stephens v. Nat'l Distibs. & Chem. Corp.*, 69 F.3d 1226, 1233 (2d Cir. 1995) (federal preemption rules "were not altered so drastically [by the MFA] as to force a federal law that clearly intends to preempt all other state laws to give way simply because the insurance industry is involved").
[6] Any irreconcilable conflict between the MFA (enacted in 1945) and the ADA (enacted in 1978) results in the ADA prevailing. *See ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 n.6 (4th Cir. 2012).

4

the plaintiff sought to enforce statutory insurance limits for emergency air transport under Florida's no-fault insurance laws. Recognizing the "broad nature" of the ADA's express preemption clause, the court determined that plaintiff's claims directly challenged defendants' rates for air ambulance services and were "expressly disallowed" by the ADA, "which intentionally leaves the price of such services to the competitive market."[7] Significantly, the court held that the MFA *does not* apply where Congress has "made plain its intent to altogether preempt state laws," and that "[t]he MFA was intended only to protect state insurance regulation from *inadvertent* intrusion by the federal government, and not to insulate the same from every federal law." *Id.* at *4 (emphasis in original).

Moreover, where federal laws involve issues of national concern, reverse preemption is improper. *See Blackfeet Nat'l Bank v. Nelson*, 171 F.3d 1237, 1244 n.10 (11th Cir. 1999) (recognizing Foreign Sovereign Immunities Act and the Civil Rights Act of 1964 as federal laws of national importance); *see also Metro. Life Ins. Co. v. Ward*, 470 U.S. 869, 880 (1985); *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1066 (2d Cir. 1982) (giving effect to Title VII's "broad and explicit preemptive provision" over MFA).

The aviation industry is undisputedly an area of national concern. The Federal Aviation Administration and U.S. Department of Transportation pervasively regulate air carriers on safety and economic matters, and the Federal Aviation Act (FAA), as amended by the ADA, provides *national* standards in the aviation industry on a wide range of matters. *See City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 639 (1973) (FAA establishes "a uniform and exclusive system of federal regulation"); *Nw. Airlines, Inc. v. Minn.*, 322 U.S. 292, 303 (1944) ("Federal control is intensive and exclusive. Planes...move only by federal permission, subject to federal inspection, in the hands of federally certified personnel...."); *Abdullah v. Am. Airlines*

---

[7] *Id.* at *4 (citing *Crane v. Native Am. Ambulance, Inc.*, 2007 WL 625917 (D. Ariz. Feb. 23, 2007)).

5

*Inc.*, 181 F.3d 363, 368 (3d Cir. 1999) ("[b]y enacting the FAA, Congress intended to rest sole responsibility for supervising the aviation industry with the federal government"). The Senate Report in support of the FAA confirms this intent, recognizing that

> aviation is unique among transportation industries in its relation to the federal government — it is the only one whose operations are conducted almost wholly within federal jurisdiction, and are subject to little or no regulation by States or local authorities. Thus, the federal government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest.

*Abdullah,* 181 F.3d at 368 (quoting S. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)).

The numerous preemption cases and DOT legal opinions relied on by Plaintiff further demonstrate how extensively federal law controls this area. Congress, by enacting the ADA, clearly did not want air carriers subject to a "patchwork" of State service-determining laws.[8] As a federal statute of national concern, the ADA is exempt from reverse preemption.

**B.    Neither HB 1255 Nor the Challenged Workers Compensation Laws and Fee Schedule Qualify as the "Business of Insurance"**

As a threshold matter, the MFA does not apply to North Dakota's workers compensation system because Title 65 was not enacted for the purpose of regulating the "business of insurance." Workforce Safety & Insurance (WSI), which manages the State's workers compensation fund, is not an insurance company, does not issue insurance contracts, and is not subject to oversight by the North Dakota Insurance Department. *See Brown v. Cassens Transp. Co.,* 546 F.3d 347, 359-61 (6th Cir. 2008) (holding workers compensation system does not regulate the "business of insurance" because no insurance contracts are issued and its purpose is to govern an employer's obligations to its employees for workplace injuries).

Even setting aside the fact that WSI is not an insurance company, Defendants' reverse preemption arguments still fail. In deciding whether an activity is the "business of insurance,"

---

[8] *Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 373 (2008).

6

courts examine: "*first*, whether the practice has the effect of transferring or spreading the policyholder's risk; *second*, whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982). The concept is narrowly defined and focuses on the core relationship between insurers and policyholders. *Hahn v. Oregon Physicians Serv.*, 689 F.2d 840, 842 (9th Cir. 1982). As such, it is critical to distinguish between statutory provisions regulating the *first-party* relationship between an insurer and insured, and those regulating the relationship with a *third-party* provider.

As explained in *Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 214 (1979), an insurer's arrangements with third-party providers are merely a cost-saving measure that reduces the insurer's cost of covering a loss that it was already obligated to cover. The element of risk-spreading is notably absent. *See Pireno*, 458 U.S. at 132-34 (use of peer review panel to determine need for chiropractic treatment was not the "business of insurance"); *Genord v. Blue Cross & Blue Shield of Mich.*, 440 F.3d 802, 807-08 (6th Cir. 2006) (state law regulating reimbursements to third-party healthcare providers was not the "business of insurance"); *Hahn*, 689 F.2d at 843-44 (excluding podiatrists as covered providers not the "business of insurance").

1.   **HB 1255 Does Not Regulate the "Business of Insurance"**

While Defendants contend that HB 1255 "was enacted to protect the interest of insurance policy holders" (Doc. 21 at 12), the law does not regulate any existing policy between an insured and insurer. Nor does it have any indicia of the types of practices that constitute the business of insurance, such as the fixing of insurance rates, the selling and advertising of policies, the licensing of companies and agents, or interpretation and enforcement of a policy. *SEC v. Nat'l Secs., Inc.*, 393 U.S. 453, 460 (1969). Because HB 1255 is not related to any specific insurance

7

contract and simply contemplates a potential relationship between third-party providers and insurers, it does not regulate the "business of insurance."

    2. **The Challenged Workers Compensation Laws and Fee Schedule Regulate the Relationship With Third-Party Providers**

The challenged workers compensation laws and fee schedule are not the "business of insurance" because (1) they relate to payment to third-party air ambulance service providers; (2) they have no effect on risk transfer because the workers compensation fund is already obligated to cover this service; and (3) the air ambulance providers are not parties to any insurance contract. Like the third-party arrangement in *Genord*, the limit on reimbursement for air ambulance services acts as a cost-savings measure for the workers compensation fund and how the third-party air ambulance service provider is ultimately reimbursed is not material to the employer's obligation to provide certain benefits to its employees for workplace injuries. *See In re Managed Care Litig.*, 298 F. Supp. 2d 1259, 1283-85 (S.D. Fla. 2003) (MFA did not reverse preempt claims by health care providers against managed care insurers who failed to fully and timely pay claims for reimbursement because the provider agreements were "ancillary" to core insurance policy).[9]

Tellingly, Defendants do not acknowledge other state workers compensation laws cited by Plaintiff that have amended their fee schedules for air ambulance services by exempting providers who qualify as "air carriers." Both California and Montana acknowledge the ADA's preemptive power over fee schedules that seek to set reimbursement rates. Defendants instead rely on a Texas administrative law judge's (ALJ) opinion that the Texas workers' compensation

---

[9] Defendants cite several antitrust cases finding that workers compensation laws are the "business of insurance." These cases are inapposite for several reasons, not the least of which is that none involved an *express* preemption clause like the ADA. *Cf. In re Workers' Comp. Ins. Antitrust Litig.*, 867 F.2d 1552 (8th Cir. 1989); *Bristol Hotel Mgmt. Corp. v. Aetna Cas. & Sur. Co.*, 20 F. Supp. 2d 1345 (S.D. Fla. 2013).

8

system and its fee schedule is directly related to the "business of insurance." (Doc. 21 at 26) That opinion, however, misconstrues the nature of the MFA and the Supreme Court cases interpreting it. Specifically, the ALJ misapplied *Royal Drug* (and numerous other cases) which hold that the "business of insurance" refers to the core relationship between an insurer and the policyholder, and *not* a third-party service provider. Moreover, the ALJ did not have the benefit the recent *Bailey* holding, which soundly rejected the MFA's reverse preemption of the ADA.

## IV.
## EMTALA PREEMPTS HB 1255

Plaintiff may challenge HB 1255 because Article III standing is the only requirement necessary for standing when preemption claims are brought under the Supremacy Clause.[10] Additionally, Defendants' suggestion that EMTALA is inapplicable to nonhospital-owned air ambulances ("NOAAs") like Plaintiff because individuals transported on NOAAs have not "come to the hospital's emergency department" *until* they have arrived on hospital property is misleading. Air ambulance services are not *only* utilized to transport patients to a hospital, but also to transfer individuals from one hospital to another. EMTALA notably places explicit restrictions on transfers. Section 489.24(e)(2) permits transfer to another medical facility only where "[t]he transfer is effected through qualified personnel," and per the Interpretative Guidelines, "[i]t is the treating physician at the transferring hospital who decides how the individual is transported... minimizing the risk to the individual who is being transferred." (Doc. 15 at 26)

Here, HB 1255 clearly conflicts with EMTALA, and Defendants' response is surprisingly brisk, noting only that the law does not demand that *hospitals* specifically inquire into insurance

---

[10] *See, e.g., Wright Elec., Inc. v. Minn. State Bd. of Elec.*, 322 F.3d 1025 (8th Cir. 2003) (plaintiffs had standing given satisfaction of Article III standing with respect to the *state* statute.)

9

matters at the expense of a delay. The statute itself demands the creation of a call list, which explicitly prioritizes travel arrangements according to insurability, and then demands that travel for all patients be arranged according to that list. Notably, Defendants do not deny that adherence to the call list protocol will, in fact, cause delays to the transport of patients in certain cases or that adherence to HB 1255 facially conflicts with EMTALA's Interpretive Guidelines, which place discretion for transport upon the treating physician.[11]

## V.
## PLAINTIFF ASSERTS A VALID COMMERCE CLAUSE VIOLATION

Plaintiff need only satisfy traditional Article III standing requirements to assert a Commerce Claim violation.[12] Defendants incorrectly suggest that analysis of a dormant Commerce Clause challenge requires a fact-intensive weighing process to determine whether a state law violates the Commerce Clause by imposing interstate commerce burdens "clearly excessive in relation to the putative local benefits." Defendants ignore that the balancing test requires a *legitimate* local public interest against which to balance the burdens on interstate commerce. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) ("*If* a legitimate local purpose is found, then the question becomes one of degree"). Here, the local purpose of HB 1255 is *illegitimate* because it regulates *service and prices* charged for air-ambulance services, which is inextricably at odds with the ADA.

## CONCLUSION

The Court should grant Plaintiff's motion for judgment on the pleadings in all respects.

---

[11] Administrative guidance may be considered to interpret the meaning of agency regulations. *See In re PepsiCo Inc. Bottled Water Mktg. & Sales Prac. Litig.*, 588 F. Supp. 2d 527 (S.D.N.Y. 2014).
[12] *General Motors Corp. v. Tracy*, 519 U.S. 278, 286 (1997) (cognizable injury extends beyond those discriminated against by the challenged statute).

Dated: October 28, 2015

                                    Respectfully submitted,

                                    /s/ Ronald J. Knoll
                                  Ronald J. Knoll (ND ID 05045)
                                  Joshua M. Feneis (ND ID 08169)
                                  Anderson, Bottrell, Sanden & Thompson
                                  4132 30th Avenue SW, Suite 100
                                  P.O. Box 10247
                                  Fargo, ND  58106-0247
                                  Phone: (701) 235-3300
                                  *rknoll@andersonbottrell.com*
                                  *jfeneis@andersonbottrell.com*
                                  Attorneys for Plaintiff


                                  /s/ Judith R. Nemsick
                                  Judith R. Nemsick (NY ID 2613461)
                                  Holland & Knight LLP
                                  31 West 52nd St
                                  New York, New York 10019
                                  (212) 513-3200
                                  *judith.nemsick@hklaw.com*
                                  Attorneys for Plaintiff